UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ORAL DAWKINS,

              Petitioner,

-against-

THE PEOPLE OF THE STATE OF NEW YORK,

              Respondent.

-----------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

**MEMORANDUM & ORDER**

08-CV-2441 (NGG)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ AUG 1 6 2011 ★
BROOKLYN OFFICE

Petitioner pro se Oral Dawkins ("Dawkins") brings this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2002 conviction for robbery in the first degree, burglary in the first degree, unlawful imprisonment in the second degree, and endangering the welfare of a child. (See Pet. (Docket Entry # 1).)[1] For the reasons set forth below, the Petition is denied.

**I. BACKGROUND**

The People's evidence at trial showed that, on August 17, 2001, Dawkins and another individual pushed their way into the apartment of Phyllis Lawrence ("Lawrence"), tied up the occupants with black plastic ties, and took money and jewelry. See Trial Tr., People v. Dawkins, Ind. No. 8813/02 (N.Y. Sup. Ct., Kings Cnty.) ("Trial Tr."). The People's case was based on the

---

[1] Dawkins incorrectly names the State of New York as the Respondent in this action. See Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts (petitioner "must name as respondent the state officer who has custody"). However, by failing to raise this issue, Respondent has waived the court's "lack of personal jurisdiction over [Dawkins's] immediate custodian and [has] submit[ted] itself in the custodian's stead to the jurisdiction of the federal courts." Smith v. Idaho, 392 F.3d 350, 356 (9th Cir. 2004); cf. Rumsfeld v. Padilla, 542 U.S. 426, 452 (2004) (Kennedy, J., concurring) ("Because the immediate-custodian and territorial-jurisdiction rules are like personal-jurisdiction or venue rules, objections to the filing of petitions based on those grounds can be waived by the Government."); Gooden v. Gonzales, 162 F. App'x 28, 29 (2d Cir. 2005) ("[T]he government does not contend in this appeal that the Attorney General is an improper respondent, or that the Eastern District of New York is an improper venue for this suit, and as such, those arguments have been waived.").

1

testimony of five of the apartment's occupants. Two of the occupants, Monifa Isaac ("Isaac") and Kwame Farrell ("Farrell"), identified Dawkins in a lineup prior to trial, and also identified Dawkins in court, during trial. Trial Tr. at 295, 303, 337, 358-59. The other three, Darnell Lawrence ("Darnell"), Angela Isaac ("Angela"), and Ayanna Adolphus ("Adolphus"), identified Dawkins only at trial. Trial Tr. at 446, 516, 544. On October 17, 2002, the jury convicted Dawkins of three counts of robbery in the first degree, burglary in the first degree, three counts of unlawful imprisonment in the second degree, and three counts of endangering the welfare of a child. Trial Tr. at 727-29.

Dawkins raised two claims on direct appeal. First, he argued that he was denied effective assistance of appellate counsel due to the Appellate Division's denial of his motion to compel the People to unseal and disclose to appellate counsel an audiotape and related documents. (See Pet'r Appeal Br. at 36.)[2] The tape and documents were ordered sealed under a protective order prior to Dawkins's trial. (See Resp. (Docket Entry # 7) at 3.) In his unsealing motion to the Appellate Division, Dawkins contended that the tape recorded a conversation between an unknown person and Isaac, in which the person gave Isaac names of several possible suspects, including Dawkins. (See Mot. to Unseal ¶ 3.) Dawkins argued that the Appellate Division's denial of the unsealing motion deprived him of the effective assistance of counsel on appeal, since it prevented appellate counsel from determining whether the non-disclosure of the tape and documents at trial violated the Due Process or Confrontation Clauses. (Id.) Dawkins's second claim on direct appeal was that prosecutorial misconduct in summation deprived him of due process. (See Pet'r Appeal Br. at 45.)

On March 14, 2006, the Appellate Division affirmed Dawkins's conviction. People v. Dawkins, 27 A.D.3d 576 (2d. Dep't 2006). The court did not address the ineffective assistance

---

[2] The state-court record is not filed on the Electronic Case Filing System.

of appellate counsel claim, noting that the proper procedure was to raise such a claim in a motion for a writ of error coram nobis. Id. On June 28, 2006, the New York Court of Appeals denied leave to appeal. People v. Dawkins, 7 N.Y.3d 754 (2006).

On October 24, 2006, Dawkins filed a motion for a writ of error coram nobis with the Appellate Division, arguing that he had received ineffective assistance of appellate counsel. (See Coram Nobis Mot.) Dawkins restated the argument he made on direct appeal regarding the sealed tape and documents, and also argued that appellate counsel failed to raise other "meritorious" arguments. (Id.) The motion was denied. People v. Dawkins, 37 A.D.3d 732 (2d Dep't 2007). On July 12, 2007, the Court of Appeals denied leave to appeal. People v. Dawkins, 9 N.Y.3d 864 (2007).

On June 10, 2008, Dawkins filed the instant Petition.

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. § 2254(e)(1).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan v. Kuhlman, 261 F.3d 303, 313 (2d Cir. 2001). A decision is "contrary

3

to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A decision is "an unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413. For relief to be warranted, the "state court's application of governing federal law . . . must be shown to be not only erroneous, but objectively unreasonable." Waddington v. Sarausad, 129 S. Ct. 823, 831 (2009) (internal quotation marks omitted).

A pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). "If a pro se litigant pleads facts that would entitle him to relief, that petition should not be dismissed because the litigant did not correctly identify the statute or rule of law that provides the relief he seeks." Thompson v. Choinski, 525 F.3d 205, 209 (2d Cir. 2008).

## III. DISCUSSION

### A. Ineffective Assistance of Appellate Counsel

#### 1. Applicable Law

To prevail on an ineffective assistance of counsel claim, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness" and "that the deficient performance prejudiced the [petitioner]." Strickland v. Washington, 466 U.S. 668, 687-88 (1984). To show prejudice under Strickland, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

4

would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

"Although the Strickland test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to appellate counsel." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). A petitioner may show that appellate counsel's performance fell below an objective standard of reasonableness "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Id. "To establish prejudice in the appellate context, a petitioner must demonstrate that there was a reasonable probability that his claim would have been successful before the state's highest court." Id. at 534 (quoting Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992)) (internal quotation marks and alterations omitted).

"In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." Id. (quoting Strickland, 466 U.S. at 690). Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000) (citing Jones v. Barnes, 463 U.S. 745 (1983)). "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones, 463 U.S. at 751-52).

2. The Sealed Tape

Dawkins claims that the Appellate Division denied him the effective assistance of appellate counsel by refusing to permit appellate counsel to review the sealed tape and

5

accompanying documents. (See Pet. at 5.) Again, appellate counsel characterized the tape as including a recording of an unidentified person, whom Isaac had contacted, stating that Dawkins had committed the burglary. According to Dawkins, by not allowing appellate counsel to review the tape, the Appellate Division prevented counsel from developing potential claims based on Brady v. Maryland, 373 U.S. 83 (1963) and the Confrontation Clause. (See id.)[3]

Brady, Giglio v. United States, 405 U.S. 150 (1972), and their progeny require the prosecution in a criminal case to disclose material exculpatory and impeachment evidence to the defense. See Brady 373 U.S. at 87; Giglio, 405 U.S. at 154-55. Exculpatory or impeachment evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Strickler v. Greene, 527 U.S. 263, 280 (1999).

"The Confrontation Clause guarantees a criminal defendant the right 'to delve into the witness' story to test the witness' perceptions and memory' and 'to impeach, i.e., discredit the witness.'" Unites States v. Treacy, 639 F.3d 32, 44 (2d Cir. 2011) (quoting Davis v. Alaska, 415 U.S. 308, 316 (1974)). As under Brady, a petitioner claiming a violation of the Confrontation Clause must show that such violation affected his trial. That is, even where the defendant's right to cross-examination was unconstitutionally curtailed, the court must decide whether, nevertheless, such error was harmless. See id. at 45. The factors to be considered on harmless error review include "'the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or

---

[3] In his motion for a writ of error coram nobis, Dawkins claimed that "by denying counsel access to the information in these [sealed] materials, the trial court precluded the defense from effectively cross-exam[in]ing . . . [Isaac] on how she was led to believe [Dawkins] was a suspect, whether the informant tried to sway her in identifying [Dawkins], exactly what information the source gave her about [Dawkins's] alleged involvement, why she or the police determined that the others the informant listed were not involved, and what the informants [sic] background was[.]" (See Coram Nobis Mot. at 8.)

6

contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case.'" Cotto v. Herbert, 331 F.3d 217, 254 (2d Cir. 2003) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986)).

This court has examined the sealed materials, which Respondent provided for in camera review. See United States v. Shaw, 354 F. App'x 439, 445 (2d Cir. 2009) (upholding district court's Brady determination upon in camera review of evidence). Nothing therein appears to be exculpatory or of significant impeachment value. The court therefore doubts that appellate counsel could have based winning Brady/Giglio or Confrontation Clause claims on the materials. Indeed, the Appellate Division, on direct appeal, also reviewed the sealed materials in camera, and determined that no Brady material existed. Dawkins, 27 A.D.3d at 576.

In any event, to the extent there was any exculpatory material in the sealed tape and documents, it was far outweighed by the inculpatory evidence presented at trial, such that there is no reasonable probability that disclosure would have altered the outcome. That is, even if the sealed tape and documents were exculpatory or impeaching, they were not materially so. And, to the extent Dawkins's right to cross-examine was violated, any error was harmless. Even had Isaac—to whom the sealed materials pertained—been discredited in the eyes of the jury, the jury could have relied on the four other eyewitness identifications of Dawkins. Thus, any Brady/Giglio or Confrontation Clause arguments appellate counsel could have made, based on the sealed materials, would likely have failed.

Accordingly, the Appellate Division, in reviewing Dawkins's coram nobis motion, did not unreasonably apply Strickland nor make an unreasonable determination of the facts in denying Dawkins's ineffective assistance of appellate counsel claim based on the sealed materials.

### 3. Other Claims

Dawkins also claims that "appellate counsel's failure to raise other meritorious arguments deprived [him] of his constitutional right to effective assistance of appellate counsel." (Pet. at 8.) Dawkins claims that appellate counsel could have presented arguments regarding: (1) "witnesses making in-court identifications that never made any previous identifications before trial"; (2) "the failure of [the] prosecutor to file a C.P.L. 710.30 notice concerning two witnesses identifying [Dawkins] on the street several days after the crime"; and (3) the prosecutor's "failure to disclose and failure to preserve Brady material." Id.

Because it is unlikely that any of these claims would have been successful, appellate counsel was not ineffective for failing to raise them. First, there was no per se constitutional violation when Darnell, Angela, and Adolphus identified Dawkins in court, without having made any previous identification. Though in-court identifications are inherently suggestive—at least where it is apparent to the jury who the defendant is—they are nevertheless admissible to the extent they are reliable. See United States v. Matthews, 20 F.3d 538, 547 (1994). In Matthews, the court held in-court identifications by witnesses who had not identified the defendant before trial to be sufficiently reliable because the witnesses "had had ample opportunity to see" the perpetrators of the crime when it was committed. Id. at 548. "Any further question of reliability was a matter for argument to, and assessment by, the jury." Id. Similarly, at Dawkins's trial, Darnell, Angela, and Adolphus all testified that they clearly saw Dawkins's face at the time of the robbery. Trial Tr. at 439, 515, 543. Since the in-court identifications were sufficiently reliable, any claim made on direct appeal based on federal law would likely have failed. A state-law-based claim would also likely have failed. See People v. Madison, 8 A.D.3d 956, 957 (4th Dep't 2004) ("In cases where there has been no pretrial identification procedure and the

defendant is identified in court for the first time, the defendant is not deprived of a fair trial because [defendant] is able to explore weaknesses and suggestiveness of the identification in front of the jury.") (quotation marks omitted); People v. Medina, 208 A.D.2d 771, 772 (2d Dep't 1994) (same).

Next, Dawkins argues that appellate counsel should have advanced a claim based on the prosecutor's failure to provide notice to the defense before trial, under N.Y. Crim. Proc. L. ("C.P.L.") § 710.30, that she intended to introduce evidence that two witnesses identified Dawkins "in the street." This claim would have failed as well. A few days after the burglary, Isaac testified, she was in a car with Lawrence and Angela when they saw Dawkins, whom Isaac recognized. Trial Tr. 355-56. Because this identification was not police arranged, no C.P.L. § 710.30 notification was required. See People v. Newball, 76 N.Y.2d 587, 591 (1990) (C.P.L. § 710.30 does not require notice of "identifications resulting from spontaneous and unplanned encounters" that do not "come about at the deliberate direction of the state"); People v. Burgos, 219 A.D.2d 504, 505 (1st Dep't 1995) ("Since the identification was not police arranged, CPL 710.30 notice of that identification was not required.").

Finally, Dawkins argues that appellate counsel should have raised arguments based on the People's failure to disclose and preserve certain evidence. The court assumes that this claim tracks the similar one made in Dawkins's coram nobis motion. There, Dawkins argued that appellate counsel should have claimed that the prosecution violated Brady by not informing the defense until mid-trial that Isaac, before identifying Dawkins in a photo array, looked through several other photos without making any identification. (Coram Nobis Mot. at 19.) While Brady might be implicated had Dawkins shown that Isaac viewed a picture of *him* and failed to make an identification, there is no indication that that is what happened. Dawkins also argues that the

People violated his rights by failing to maintain a record of the photos Isaac viewed. (Id. at 19-20.) However, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, 488 U.S. 51, 58 (1988). There is nothing in the record to indicate such bad faith. Therefore, any argument based on the photos Isaac viewed before the photo array would have failed on appeal.

Dawkins also argued that appellate counsel should have claimed that the People violated his rights by not preserving certain black plastic ties that the perpetrators of the burglary used to bind their victims. (Coram Nobis Mot. at 20.) Again, there is nothing in the record to indicate that the plastic ties would have constituted Brady material, or that the police failed to preserve them in bad faith. Accordingly, any appellate argument based on the ties would have been fruitless. Dawkins also argues that appellate counsel should have claimed that the People violated his rights by not running fingerprint tests on the plastic ties. However, "the police do not have a constitutional duty to perform any particular tests." Youngblood, 488 U.S. at 59.

Because it is highly unlikely that the additional claims Dawkins raises would have been successful, Dawkins has not shown that appellate counsel was ineffective for failing to advance those claims on direct appeal. Therefore, the Appellate Division, in rejecting Dawkins's ineffective assistance of appellate counsel claim, did not unreasonably apply Strickland nor make an unreasonable determination of the facts.

### B. The Prosecutor's Summation

Dawkins argues that his due process rights were violated by the prosecutor's misconduct in summation. (See Pet. at 6.) He claims that the prosecutor continually attempted to arouse the jury's sympathy for the child victims, mischaracterized and impugned the integrity of the

10

defense, vouched for her witnesses, and alluded to facts not in the record. (Id.) The Appellate Division found that "any prejudice to the defendant was mitigated by the trial court's actions in sustaining the defense counsel's objections, striking inappropriate remarks from the record, issuing curative instructions, and charging the jury." Dawkins, 27 A.D.3d at 577.[4]

To successfully make out a claim cognizable on habeas review based on a prosecutor's comments at trial, a petitioner must demonstrate that the prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). Under this standard, only "egregious" prosecutorial misconduct can give rise to a constitutional claim. See Miranda v. Bennett, 322 F.3d 171, 180 (2d Cir. 2003) (quoting Donnelly, 416 U.S. at 647-48). A prosecutor's comments in summation constitute "grounds for reversal only when the remarks caused 'actual prejudice.'" Dunn v. Sears, 561 F. Supp. 2d 444, 455 (S.D.N.Y. 2008) (citing Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998)). "In determining whether the prosecutor's comments cause[d] prejudice, [a] court considers three factors: '(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the improper statements.'" Id. at 457 (quoting United States v. Thomas, 377 F.3d 232, 245 (2d Cir. 2004)). "Regarding the second part of the test, a limiting instruction by the judge during the jury charge can cure the prosecutorial misconduct. As to the third part of the test, a petitioner must show that he would not have been convicted but

---

[4] Respondent argues that Dawkins's prosecutorial misconduct claim is procedurally barred, based on an independent and adequate state ground. On direct appeal, the Appellate Division ruled that "[t]he defendant's contention that the prosecutor's summation comments denied him a fair trial is *largely unpreserved* for appellate review." Dawkins, 27 A.D.3d at 577 (emphasis added). For a procedural default to bar consideration of a claim on habeas review, the state court must have "clearly and expressly" stated that its judgment rested on a state procedural bar. Galdamez v. Keane, 394 F.3d 68, 77 (2d Cir. 2005) (quoting Harris v. Reed, 489 U.S. 255, 263 (1989)). The Appellate Division's finding that the prosecutorial misconduct claim was "largely unpreserved" did not constitute such a clear and express statement.

11

for [the] prosecutor's misconduct." Osorio v. Conway, 496 F. Supp. 2d 285, 301 (S.D.N.Y. 2007) (citing United States v. Elias, 285 F.3d 183, 192 (2d Cir. 2002)).

Dawkins does not detail his prosecutorial misconduct claims in the Petition. Therefore, the court relies on the brief Dawkins submitted on direct appeal, in which he made the same claims. Dawkins first contends that the prosecutor improperly elicited the jury's sympathy by repeatedly emphasizing the fact that the victims were children, referring to them as "innocent," "frightened," and "fearing for their lives," and asking the jurors to "imagine how it felt for these children to be restrained at gunpoint . . . with that awful, awful feeling you get in your stomach when you are scared to death." (Pet'r Appeal Br. at 47-49 (citing Tr. at 641-43, 662, 674-76).) Though these comments may have been inappropriately geared toward arousing emotion, they were also based on the trial record: the evidence at trial showed that some of the victims of the robbery were indeed children or young teenagers who had been bound and robbed at gunpoint. (Tr. at 259-60, 265-66, 436, 447-48, 539, 542-43, 546.) Therefore, any misconduct was not of constitutional magnitude. See Osorio v. Conway, 496 F. Supp. 2d 285, 301 (S.D.N.Y. 2007) (holding that prosecutor's comment that the defendant's face was the last one the victim and her child "were ever going to see on this earth" did not constitute misconduct since the comment was "fairly drawn from the evidence," which showed that the petitioner had "pointed a gun at the victim's chest [and] robbed her in front of her children"); Ogletree v. Graham, 559 F. Supp. 2d 250, 259-60 (N.D.N.Y. 2008) (finding that, because sympathy-eliciting comments were "supported by the evidence," prosecutor did not commit misconduct). Furthermore, as discussed below, the trial court sustained defense counsel's objections to these comments and made clear to the jury that its verdict could not be based on sympathy.

Second, Dawkins claims that the prosecutor committed misconduct by attacking the integrity of the defense. Dawkins first points to the prosecutor's accusations that defense counsel was trying to "fool" and "distract" the jury into believing that the prosecution witnesses had formed a "huge conspiracy" to lie. (Pet'r Appeal Br. at 51-54 (citing Tr. at 646, 653, 661, 669-71).) Again, these comments were based on the record. In summation, defense counsel noted that the prosecution witnesses were all "interrelated . . . by blood or marriage" and argued that prosecution witness Lawrence decided to "say Oral Dawkins was the one who did it" because of her "animosity" toward the mother of Dawkins's child, adding, "a decision was made to blame someone . . . . [L]et's put it on Oral Dawkins . . . ." (Tr. at 591, 637, 639.) Dawkins also claims that the prosecutor committed misconduct by arguing that defense counsel wanted the jury "not to care" about the victims because Isaac and Lawrence had criminal records. (Pet'r Appeal Br. at 51-54 (citing Tr. at 643, 667-68).) While such commentary was improper, it was mitigated, as discussed below, by the trial court's instructions.

Third, Dawkins argues that the prosecutor improperly vouched for the strength of her case by asking the jury how the eyewitnesses could "possibly have been mistaken" as to their identification of Dawkins, given their ability to observe him during the commission of the crime. (Pet'r Appeal Br. at 55-56 (citing Tr. at 649, 656, 660-61).) These comments were fair arguments based on the evidence and did not constitute improper vouching. As the Second Circuit has explained, "[a]ttorney statements vouching for the credibility of witnesses are generally improper because they imply the existence of extraneous proof. In a particular context, however, what might superficially appear to be improper vouching for witness credibility may turn out on closer examination to be permissible reference to the evidence in the case." United States v. Perez, 144 F.3d 204, 210 (2d Cir. 1998) (internal citations and alterations omitted).

Here, the prosecutor was arguing that, in light of the witnesses' opportunity to observe, they were either correct that Dawkins was the perpetrator or they were purposefully lying—that is, they could not have been "mistaken." (Tr. at 649, 656-57, 661.) Since this argument did not imply any extraneous personal knowledge on the prosecutor's part, it did not constitute improper vouching. See Velazquez v. Poole, 614 F. Supp. 2d 284, 315 (E.D.N.Y. 2007) ("The prosecutor told the jury that in evaluating the victim's credibility, they should consider . . . that the victim had a number of opportunities to view petitioner. Thus, '[b]ecause the prosecutor did not imply the existence of extraneous proof, we cannot say that her statements were an improper vouching for the credibility of the witness.'") (quoting Perez, 144 F.3d at 210) (alterations omitted).

Finally, Dawkins argues that the prosecutor improperly referred to evidence not in the record when she argued that a prosecution witness did not go to the police because "there would be ramifications for her saying who was responsible," and when she characterized the burglarized apartment as not being one where "rich people" would live—i.e., not a home that would be targeted in the absence of the motive attributed to Dawkins. (Pet'r Appeal Br. at 57-58 (citing Tr. at 661, 668).) A prosecutor "may not refer to facts that are not in the record or misstate evidence." United States v. Harry, 308 F. App'x 516, 517 (2d Cir. 2009). However, the prosecution "has broad latitude in the inferences it may reasonably suggest to the jury during summation." Id. (internal quotation marks omitted). Without deciding whether the prosecutor here crossed the line, the court notes that the court sustained defense counsel's objections to the prosecutor's characterization of the victims' apartment. (Tr. at 668.)

Indeed, the trial judge thoroughly cured any improprieties in the prosecutor's summation. The judge, upon objection, instructed the jury to strike the prosecutor's sympathy-inducing comments regarding the victims' youth and innocence and to disregard the prosecutor's

14

argument that defense counsel was trying to convince the jury not to care about Isaac and Lawrence due to their criminal records. (Id. at 643-44 ("Sympathy doesn't come into this."), 667, 671, 674, 675.) The court sustained objections to the prosecutor's argument that defense counsel wanted the jury to believe that the prosecution witnesses were lying and had formed a "conspiracy" to frame Dawkins. (Id. at 646-47, 661, 669-70.) The court also instructed the jury to decide the facts "in a cool, calm, deliberate manner, without any fear, favor, passion, prejudice or sympathy for anyone," and made clear that the attorneys' arguments did not constitute evidence. (Id. at 585, 681.)

Finally, as discussed above, there was a wealth of evidence against Dawkins—most notably, five eyewitness identifications.

Thus, the Appellate Division did not unreasonably apply the law or make an unreasonable determination of the facts in finding that any misconduct committed by the prosecutor was sufficiently mitigated by the trial court's interventions and instructions.

## IV. CONCLUSION

For the foregoing reasons, Dawkins's Petition for a writ of habeas corpus is DENIED. A certificate of appealability will not issue because Dawkins has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      August 15, 2011

NICHOLAS G. GARAUFIS
United States District Judge